1              UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NORTH CAROLINA
2                 WESTERN DIVISION

3

4   UNITED STATES OF AMERICA,    )
                          )
5                          )
               PLAINTIFF,   )
6                          )
            VS           ) CASE NO. 5:10-HC-2124-BO
7                          )
                          )
8   PETER M. EBEL,             )
                          )
9              DEFENDANT.   )

10

11

12

13                   STATUS CONFERENCE

14                    MAY 6, 2011

15            HONORABLE TERRENCE W. BOYLE, PRESIDING

16

17

   APPEARANCES:
18

       MR. G. NORMAN ACKER, III
19      ASSISTANT UNITED STATES ATTORNEY
       310 NEW BERN AVENUE
20      RALEIGH, NC  27601
       (FOR THE GOVERNMENT)
21

       MR. EDWARD D. GRAY
22      ASSISTANT UNITED STATES ATTORNEY
       310 NEW BERN AVENUE
23      RALEIGH, NC  27601
       (FOR THE GOVERNMENT)
24

25

```
1   APPEARANCES:  (CONT.)

2        MR. ROBERT LONNIE COOPER
         ATTORNEY AT LAW
3        1719 RAMSEY STREET
         P.O. BOX 1598
4        FAYETTEVILLE, NC   28302-1598
         (FOR THE RESPONDENT; MORNING SESSION ONLY)
5
         MR. JAMES RYAN HAWES
6        ATTORNEY AT LAW
         127 W. HARGETT STREET
7        RALEIGH, NC   27601

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   SHARON K. KROEGER, COURT REPORTER
     MACHINE SHORTHAND REPORTER, COMPUTER AIDED TRANSCRIPTION
```

1          THE COURT:  ALL RIGHT.  I GUESS YOU CAN BRING

2    MR. EBEL OUT.  LET'S SEE.  GOOD MORNING, MR. GRAY, MR.

3    ACKER, MR. COOPER.

4          MR. ACKER:  GOOD MORNING.

5          MR. COOPER:  GOOD MORNING.

6          THE COURT:  YOU CAN HAVE A SEAT.  MR. COOPER,

7    ARE YOU THE FIRST LAWYER TO BE APPOINTED TO REPRESENT THE

8    DEFENDANT?

9          MR. COOPER:  NO, YOUR HONOR.

10          THE COURT:  WHO WAS THE FIRST ONE?

11          MR. COOPER:  YOUR HONOR, YOU HAVE TO GO BACK

12    TO THE BEGINNING OF THE CASE, BUT I THINK I AM --

13          THE COURT:  NO, I MEAN IN THE CIVIL CASE.

14          MR. COOPER:  IN THE CIVIL CASE?  YES.

15          THE COURT:  OKAY.

16          MR. COOPER:  I THINK CERTAINLY THE PUBLIC

17    DEFENDER'S OFFICE WAS REPRESENTING HIM PRIOR TO MY

18    SERVICES.  I DO BELIEVE I AM THE FIRST ONE OUTSIDE OF THE

19    PUBLIC DEFENDER'S OFFICE.

20          THE COURT:  OKAY.  MR. EBEL, DO YOU PRONOUNCE

21    IT EBEL?

22          THE RESPONDENT:  YES, SIR.

23          THE COURT:  WAS THE FEDERAL PUBLIC DEFENDER

24    YOUR FIRST LAWYER?

25          THE RESPONDENT:  YES, SIR.

1          THE COURT:  AND THEN WE HAD A HEARING.  WERE

2  THEY YOUR LAWYER WHEN YOU HAD THE HEARING?

3          THE RESPONDENT:  I AM SORRY, SIR.

4          THE COURT:  WERE THEY YOUR LAWYER WHEN WE HAD

5  THE HEARING?

6          THE DEFENDANT:  YES, SIR.  IN JANUARY, I

7  BELIEVE, SIR, IT WAS MR. MC NAMARA.

8          THE COURT:  THAT WAS THE ONLY OTHER HEARING

9  YOU HAVE HAD IN THIS CASE?

10         THE RESPONDENT:  THAT'S CORRECT, SIR.

11         THE COURT:  THEN YOU WERE CERTIFIED IN JUNE OR

12  JULY OF LAST YEAR?

13         THE RESPONDENT:  YES, SIR.  JUNE, SIR.

14         THE COURT:  OKAY.  AND AFTER THAT HEARING, YOU

15  DISMISSED THEM AND I APPOINTED THE PANEL ATTORNEY?

16         THE RESPONDENT:  MR. COOPER, YES, SIR.

17         THE COURT:  AND DO YOU WANT HIM TO BE

18  DISMISSED?

19         THE RESPONDENT:  I AM AFRAID, SIR, I HAVE SOME

20  PAPERWORK HERE, IF YOU WOULD CARE TO LOOK AT IT.  THERE

21  IS A PERSONALITY CONFLICT BETWEEN MR. COOPER AND MR.

22  COOPER'S OFFICE, AND MYSELF AND MY WIFE.

23         THE COURT:  I HAVE READ YOUR LETTER OR THE

24  LETTER OF APRIL 28.

25         THE RESPONDENT:  YES, SIR.

```
1              THE COURT:  DID YOU GET A COPY OF THAT?

2              MR. GRAY:  NO, YOUR HONOR.  THAT WAS FILED

3    UNDER SEAL.  WE WERE NOT ABLE TO RETRIEVE THAT.

4              THE COURT:  DO YOU HAVE ANY OBJECTION TO THEM

5    SEEING IT?

6              THE RESPONDENT:  NO, SIR.

7              THE COURT:  NO.  DON'T YOU THINK THEY SHOULD

8    SEE IT?

9              THE RESPONDENT:  IF THEY WISH, I HAVE NO

10   OBJECTION.

11             THE COURT:  WELL, IT'S GOING TO BE HARD FOR

12   THEM TO RESPOND IF THEY NEVER SEE IT.

13             THE RESPONDENT:  YES.  BY ALL MEANS.

14             THE COURT:  YOU PUT THIS TOGETHER AND FILED IT

15   YOURSELF?

16             THE RESPONDENT:  YES, SIR.

17             THE COURT:  I AM GOING TO HAVE A COPY GIVEN TO

18   YOU.  I AM JUST TRYING TO KEEP THE FLOW OF BUSINESS GOING

19   HERE, BUT I AM GOING TO HAVE A COPY GIVEN TO YOU, AND WHO

20   IS THE OTHER LAWYER THAT YOU ARE INTERESTED IN?

21             THE RESPONDENT:  MR. HAWES, SIR.

22             THE COURT:  MR. HAWES.  HE IS IN SOME OTHER

23   CASES?

24             THE RESPONDENT:  CORRECT, SIR.

25             THE COURT:  HE IS GOING TO BE HERE THIS
```

1    AFTERNOON?

2              THE RESPONDENT:  CORRECT.

3              THE COURT:  SO IF I LET MR. COOPER OUT AND IF

4    MR. HAWES IS INTERESTED, HAVE YOU TALKED TO HAWES?

5              THE RESPONDENT:  MY WIFE TALKED TO HIM, SIR.

6              THE COURT:  AND HAWES INDICATED HE WOULD NOT

7    BE OPPOSED TO BEING INVOLVED IN THE CASE?

8              THE RESPONDENT:  THAT IS MY UNDERSTANDING,

9    YES, SIR.

10             THE COURT:  SO IF I AM POSSIBLY GOING TO DO

11   THAT, I WILL BRING YOU BACK THIS AFTERNOON WHEN HAWES IS

12   HERE, BUT THE -- WHERE DID YOU GET THE STUFF FROM THE

13   B.O.P.?

14             THE RESPONDENT:  THAT IS DISCOVERY, SIR, THAT

15   MR. COOPER SENT.

16             THE COURT:  SO THE GOVERNMENT HAS THIS?  IT

17   CAME FROM THE GOVERNMENT; DIDN'T IT?

18             THE RESPONDENT:  YES, SIR.

19             THE COURT:  MR. COOPER?

20             MR. COOPER:  YES, YOUR HONOR.

21             THE COURT:  SO THE ONLY THING THEY DON'T HAVE

22   IS YOUR LETTER; IS THAT IT?

23             THE RESPONDENT:  THAT'S CORRECT, SIR.

24             THE COURT:  BUT THEY HAVE ALL THE OTHER

25   UNDERLYING DOCUMENTS?

1              THE RESPONDENT:  THEY DO, SIR.

2              THE COURT:  THEY CREATED THEM AND SENT THEM TO

3      YOU?

4              THE RESPONDENT:  YES.  THERE IS THE ORIGINAL

5      HERE THAT THEY ARE WELCOME TO SEE.  I CAN PASS THIS

6      ACROSS, IF THAT WILL SHORT CIRCUIT THINGS.

7              THE COURT:  ALL RIGHT.  JUST GIVE IT TO THEM

8      AND WE'LL GET YOU A COPY.  THERE IS NOTHING SECRET IN

9      THAT.

10             (WHEREUPON, THERE WAS A PAUSE.)

11             THE COURT:  SO THIS MATERIAL THAT YOU ATTACHED

12     HAVING TO DO WITH RECOMMENDATIONS FOR COMMUNITY

13     SUPERVISION, YOU ARE SAYING THAT THE GOVERNMENT HAD A

14     PROTOCOL THAT THEY WERE GOING TO APPLY TO YOU IN YOUR

15     SUPERVISED RELEASE.  IS THAT WHAT YOU ARE SAYING?

16             THE RESPONDENT:  PRINCIPALLY WHAT I WAS SAYING

17     IS THAT IN THE PROCESS, MY WIFE LIVES IN VIRGINIA.  MY

18     CASE IS OUT OF CALIFORNIA BECAUSE I WAS HELD AT LOS

19     ANGELES, LAX, ON ENTRY TO THE UNITED STATES.  THAT IS THE

20     ONLY CONNECTION I HAVE WITH CALIFORNIA IS ACTUALLY BEING

21     ARRESTED THERE, AND THAT IS WHERE THE CASE COMES OUT OF.

22             MY WIFE CURRENTLY LIVES IN VIRGINIA, BUT SHE

23     HAS ACQUIRED A HOME IN NORTH CAROLINA.  AND MY -- BUT

24     LAST SUMMER, AS THAT DOCUMENTATION SHOWS, THERE WERE

25     PEOPLE INVOLVED IN GETTING THE CASE RELOCATED FROM LOS

1  ANGELES TO VIRGINIA WHERE MY WIFE LIVED AT THE TIME, BUT

2  THAT GOT INTERCEPTED BY THIS CERTIFICATION.

3          SO IN THE PROCESS OF THAT RELOCATION GOING

4  FORWARD, IT WAS INTERRUPTED AND STOPPED BECAUSE I WAS

5  BROUGHT DOWN TO BUTNER, NORTH CAROLINA.

6          NOW, WHAT I WISH TO DO, OF COURSE, IS CONTINUE

7  THE RELOCATION TO NORTH CAROLINA SO THAT IF I AM AND WHEN

8  I AM RELEASED, I WOULD COME UNDER THE JURISDICTION, OR

9  WHATEVER THE WORDING IS, FOR THE PROBATION SERVICE IN

10  NORTH CAROLINA SO THAT I WOULD BE ABLE TO LIVE WITH MY

11  WIFE.

12          MY CONCERN IS THAT IN THE SOMP REPORT, WHICH

13  WE CONTEST RIGOROUSLY --

14          THE COURT:  THE WHAT?

15          THE RESPONDENT:  THE SOMP REPORT.  THAT IS THE

16  REPORT FROM DEVENS, AT THE VERY END, BY THIS GENTLEMAN

17  NAMED THIBAULT.  THAT IS THE SEXUAL OFFENDERS MANAGEMENT

18  PROGRAM.  IT'S A HIGHLY PREJUDICIAL REPORT THAT WE WISH

19  TO CONTEST AT A TRIAL, AND MANY OF THE STATEMENTS,

20  RECOMMENDATIONS, AND THINGS SAID THROUGHOUT THIS

21  DOCUMENTATION ARE SPURIOUS, AT BEST, AND OUTRIGHT FALSE,

22  AT WORSE, WHICH WE CAN PROVE, BUT THAT CAN ONLY COME

23  ABOUT AT THE HEARING OR AT A TRIAL, I SHOULD SAY.

24          THE COURT:  WELL, THIBAULT WRITES THIS

25  DOCUMENT THAT ON PAGE 16 HE SIGNS.

1                    THE RESPONDENT:  THAT HE SIGNED; RIGHT.

2                    THE COURT:  IS THAT WHAT YOU ARE TALKING

3       ABOUT?

4                    THE RESPONDENT:  THAT IS THE STIPULATION.

5                    THE COURT:  IT DOESN'T HAVE A DATE.

6                    THE RESPONDENT:  NO, SIR.  I BELIEVE IT BEGINS

7       ON 1282 -- I AM SORRY.  NO.  IT'S BEFORE THAT.  IT BEGINS

8       ON PAGE 12 OF HIS NOTATION, AND AT THE BOTTOM, 1280 OF

9       THE B.O.P. NOTATION, AND THIS IS AT THE END OF HIS

10      ASSESSMENT THAT HE MADE.

11                   THE COURT:  WELL, IS THIS ASSESSMENT SAYING

12      YOU SHOULD BE DETAINED OR YOU SHOULD BE RELEASED?

13                   THE RESPONDENT:  SHOULD BE RELEASED.  HE HAD

14      NO OBJECTION TO MY RELEASE.  HE JUST HAD ON TOP OF THAT A

15      WHOLE BUNCH OF STIPULATIONS, INCLUDING WHICH IS TOTALLY

16      UNJUST, IS WHERE HE RECOMMENDS THAT I NOT BE PERMITTED TO

17      RESIDE WITH MY WIFE, WHICH IS RECOMMENDATION NUMBER 4,

18      "MR. EBEL SHOULD NOT RESIDE" -- NO, I AM SORRY.  IT'S NOT

19      NUMBER 4.  I AM TRYING TO FIND IT.

20                   THE COURT:  ALL RIGHT.  AND THIS

21      APPARENTLY --

22                   THE RESPONDENT:  YES, IT IS NUMBER 4.  I AM

23      SORRY.

24                   THE COURT:  THIS COMES UNDER THE DATE OF JUNE

25      8, 2010?

1        THE RESPONDENT:  YES, THAT WAS AT THE TIME OF

2   THE CERTIFICATION.

3        THE COURT:  WELL, ARE YOU SAYING AGAIN THAT HE

4   SAYS YOU SHOULD BE RELEASED OR THAT YOU SHOULD BE

5   DETAINED?

6        THE RESPONDENT:  HIS STATEMENT, HIS WHOLE

7   THING IS THAT I SHOULD BE RELEASED, YES, SIR.  YES.

8        THE COURT:  AND THEN --

9        THE RESPONDENT:  THIS DOCUMENT -- I AM SORRY

10  FOR INTERRUPTING, SIR -- THE DOCUMENT THAT YOU ARE

11  LOOKING AT IS THE REPORT, I BELIEVE, THAT WAS TO BE SENT

12  TO LOS ANGELES PROBATION BECAUSE I WAS TO BE SENT OUT

13  THERE, RELEASED ON THE 22ND, AND THIS IS EXTRACTED FROM

14  HIS ACTUAL PROBATION REPORT.

15       THE COURT:  OKAY.  ALL RIGHT.

16       THE RESPONDENT:  OR RECOMMENDATIONS TO

17  PROBATION.

18       THE COURT:  ALL RIGHT.  AND THIS SHEET WHICH

19  HAS A LOT OF ABBREVIATIONS IN IT -- I DON'T KNOW WHAT

20  THEY MEAN -- BUT DATED JANUARY 13, 2009, SUBJECT, WALSH

21  NOTIFICATION PANEL, EBEL --

22       THE RESPONDENT:  THAT'S CORRECT, SIR.

23       THE COURT:  THAT IS THE ONE THAT IS A YEAR AND

24  A HALF AHEAD OF THE DATE THAT YOU ARE GOING TO BE

25  RELEASED?

1          THE RESPONDENT:  YES, SIR.

2          THE COURT:  AND IT SAYS BASED ON THE REVIEW OF

3    ALL AVAILABLE INFORMATION CONCERNING THIS INMATE, THE

4    PANEL DETERMINED THAT THE INMATE DOES NOT MEET

5    DEFINITIONAL CRITERIA OF SEXUALLY DANGEROUS PERSON, AND

6    YOU ARE RELYING ON THAT, TOO; IS THAT RIGHT?

7          THE RESPONDENT:  YES, SIR.

8          THE COURT:  ALL RIGHT.  YOU CAN HAVE A SEAT.

9    HOW DOES HE GET CERTIFIED IF THE B.O.P. HAS DETERMINED

10   THAT HE DOESN'T MEET THE CRITERIA?

11         MR. GRAY:  YOUR HONOR, WE ARE AT A

12   DISADVANTAGE BECAUSE WE DON'T HAVE THE DOCUMENTS THAT

13   YOU ARE SPEAKING OF IN FRONT OF US RIGHT NOW.

14         THE COURT:  OKAY.

15         MR. GRAY:  WE DON'T KNOW WHICH DOCUMENTS HE

16   HAS ATTACHED TO HIS LETTER.  IF WE CAN HAVE AN

17   OPPORTUNITY TO TAKE A LOOK AT THOSE -- HOWEVER, THE BASIS

18   FOR CERTIFICATION --

19         THE COURT:  SO YOU HAVEN'T SEEN WHAT I AM

20   READING FROM?

21         MR. GRAY:  NO, YOUR HONOR.

22         THE COURT:  OKAY.  WELL, IT WOULD BE UNFAIR TO

23   ASK YOU TO RESPOND.  MAYBE WE WILL DO THAT THIS AFTERNOON

24   WITH RESPECT TO HIM.

25         YOU WANT TO GET OUT, TOO; IS THAT RIGHT, MR.

1    COOPER?

2              MR. COOPER:  WELL, YOUR HONOR, IT IS PATENTLY

3    CLEAR TO ME THAT MR. EBEL IS UNHAPPY AND DISSATISFIED FOR

4    WHATEVER THE REASON IS.  AND IF IT'S THE COURT'S

5    PLEASURE, THEN YES, YOUR HONOR, I WILL MOVE TO WITHDRAW.

6    THE RELATIONSHIP HAS DETERIORATED TO THE POINT WE ARE NOT

7    GOING TO BE ABLE TO GET ANYTHING DONE.  I DON'T THINK WE

8    HAVE ANY OTHER CHOICE BUT TO DO THAT.

9              THE COURT:  WHERE IS HIS CASE RIGHT NOW IN

10   TERMS OF THE PROCESS?

11             MR. COOPER:  WE RECEIVED DISCOVERY ON THE CASE

12   ON APRIL 1, AND IT'S SOME -- I HAVE THE DISK HERE -- 1700

13   PAGES.  I REVIEWED THE DISCOVERY.  I MAILED SUCH PORTIONS

14   OF THE DISCOVERY TO MR. EBEL THAT WOULD BE ALLOWED IN THE

15   B.O.P.

16              AND PRIOR TO RECEIVING -- PRIOR TO ME MAILING

17   THE DISCOVERY IS WHEN I GOT THE LETTER FROM MR. EBEL

18   ASKING THAT I WITHDRAW.

19             THE COURT:  YES.

20             MR. COOPER:  THAT IS NOT THE FIRST TIME HE AND

21   I HAVE HAD A DISCUSSION ABOUT WHETHER OR NOT HE DESIRED

22   MY REPRESENTATION, SO AT THAT POINT I FIGURED THE BEST

23   THING TO DO WOULD BE TO MOVE TO WITHDRAW.

24             EVEN SO, ONCE I HAD THE DISCOVERY, HE IS

25   ENTITLED TO REVIEW IT.  AS I SAID, I MAILED SUCH PORTIONS

1    TO HIM AS I COULD, AND I SPOKE TO HIM AGAIN THIS MORNING

2    AND HE HAS STATED THAT HE IS AWARE OF WHAT THE STATUS IS.

3              WE AREN'T AGREEABLE ON WHAT THE NEXT STEP

4    WOULD BE.  BUT HE SAYS IT IS JUST NOT GOING TO WORK AND

5    IF IT'S NOT GOING TO WORK, IT'S NOT GOING TO WORK.  THAT

6    IS WHERE WE ARE.  I HAVE THE DISCOVERY DISK.  I AM MORE

7    THAN HAPPY TO TURN IT BACK OVER TO THE GOVERNMENT.

8              THE COURT:  YOU WHAT?

9              MR. COOPER:  I HAVE THE DISCOVERY DISK.  I AM

10   MORE THAN HAPPY TO TURN IT BACK OVER.

11             THE COURT:  WELL, DON'T TURN IT OVER TO THEM

12   IF IT'S THE DISCOVERY.  TURN IT OVER TO HIS NEXT LAWYER.

13             MR. COOPER:  I WILL DO THAT.

14             THE COURT:  OKAY.

15             AND AGAIN, I AM TRYING TO JUST BE IN A WORKMAN

16   LIKE WAY, GET INTO THESE CASES.  DO YOU KNOW WHAT IS IN

17   THE DISCOVERY OR IS IT JUST SORT OF A PACKAGE DISCOVERY

18   OF EVERYTHING THAT MIGHT BE RELEVANT WITHOUT BEING

19   SCANNED TO TELL.

20             WHAT -- HERE IS WHAT I AM TRYING TO GET AT.

21   IT'S NOT A TRICK QUESTION.  I AM OPERATING UNDER THE

22   PRINCIPLE THAT THE BRADY TYPE ORDER THAT I ENTERED IN

23   EDWARDS IS GOING TO BE EFFECTIVE IN MY CASES, AND SO I AM

24   INTERESTED IN KNOWING IF YOU HAVE A VOLUME OF INFORMATION

25   FOR THIS PERSON AND YOU HAVE CATALOGED IT OR COLLECTED IT

1    RATHER AND PUT IT ON A DISK.  HAVE YOU DISCRIMINATED

2    THROUGHOUT IT AND SAID, WELL, THIS IS BRADY, THIS IS

3    COMPLIANCE WITH BRADY, THIS IS FAVORABLE, THIS IS

4    UNFAVORABLE, OR IS IT JUST THE GROSS INFORMATION?

5              MR. ACKER:  YOUR HONOR, LET ME SPEAK TO THE

6    BRADY ISSUE AS IT RELATES TO THIS PARTICULAR CASE AND

7    THEN ALSO A LITTLE BIT MORE GENERALLY.  IN THIS

8    PARTICULAR CASE, AS IN ALL THE CASES, WE TURNED OVER

9    EVERYTHING THAT THE STANDING ORDER INSTRUCTS US TO DO

10   WHICH IS ALL THE UNDERLYING MEDICAL RECORDS, ALL THE

11   PSYCHOLOGICAL RECORDS, ANY TESTING, ANY PRIOR

12   PSYCHOLOGICAL EVALUATIONS THAT ARE ALREADY IN THE B.O.P.

13   FILES.

14             WE HAVE ALSO, I BELIEVE, TURNED OVER TWO --

15   ONE EXPERT REPORT AND A SECOND EXPERT REPORT WILL BE

16   TURNED OVER WITHIN THE NEXT TWO WEEKS.

17             THE COURT:  IN THIS CASE?

18             MR. ACKER:  YES.  WHEN WE SPOKE PREVIOUSLY

19   ABOUT THE EDWARDS CASE, THE QUESTION WAS WHETHER OR NOT

20   WE COULD WITHHOLD EXPERT REPORTS UNDER RULE 26 OF THE

21   CIVIL RULES THAT WERE NOT FAVORABLE, WHETHER THEY WERE

22   WRITTEN OR ORAL.

23             AND SINCE THE TIME OF THE ORDER THAT YOU

24   ENTERED IN EDWARDS, WE HAVE ENTERED INTO A STIPULATION

25   WITH THE FEDERAL PUBLIC DEFENDER AND HAVE AGREED THAT

1    THAT WOULD APPLY TO ALL CASES, INCLUDING PANEL ATTORNEYS,

2    IN WHICH ANY REPORT, FAVORABLE OR UNFAVORABLE, ORAL OR

3    WRITTEN, BY THE PSYCHOLOGISTS AT BUTNER WILL BE TURNED

4    OVER, REGARDLESS.  WE WOULD NOT RELY ON RULE 26 OF THE

5    RULES OF CIVIL PROCEDURE IN THAT.

6         WHAT WE HAVE NOT AGREED TO DO ACROSS THE BOARD

7    IS TO TURN OVER ANY UNFAVORABLE OPINIONS FROM OUTSIDE

8    EXPERTS.  THAT IS, EXPERTS OTHER THAN --

9         THE COURT:  FAVORABLE TO THE DEFENDANT?

10        MR. ACKER:  FAVORABLE TO THE DEFENDANT.  WE

11   STILL CONTEND THAT WE HAVE THE RIGHT UNDER RULE 26 OF THE

12   RULES OF FEDERAL PROCEDURES TO USE AN EXPERT TO CONSULT

13   WITH THAT WE DO NOT PLAN TO CALL AT TRIAL AND WE ARE NOT

14   REQUIRED TO TURN THAT OVER.

15        WE UNDERSTAND, HOWEVER --

16        THE COURT:  SO IN THEORY, YOU CAN HAVE A THIRD

17   PARTY EXPERT OR WITNESS, A THIRD PARTY WITNESS, WHOSE

18   INFORMATION COULD BE CREATED AND ALSO KNOWN TO YOU AND IT

19   COULD BE FAVORABLE TO THE DETAINEE OR IN SOME WAY LEAD TO

20   FAVORABLE INFORMATION FOR THE DETAINEE AND BECAUSE YOU

21   WERE NOT GOING TO MAKE THAT A PART OF YOUR CASE, YOU

22   DON'T HAVE TO DISCLOSE IT.  THAT IS YOUR POSITION?

23        MR. ACKER:  THAT IS OUR POSITION, YOUR HONOR.

24        THE COURT:  BUT THE BRADY ORDER IN EDWARDS

25   WOULD ADDRESS THAT.

1     MR. ACKER:  YES, IT WOULD, YOUR HONOR.  AND

2  THE WAY WE WOULD ASK YOUR HONOR TO DEAL WITH THAT IS IF

3  YOUR HONOR IN EACH CASE THAT IS BEFORE YOUR HONOR,

4  ENTERED AN ORDER NOTING THAT THE GOVERNMENT HAS TAKEN

5  THIS POSITION AND OBJECTS TO THE APPLICATION OF BRADY TO

6  A CIVIL CASE, BUT NEVERTHELESS, YOU RULE THAT WE DO HAVE

7  TO, FOR THE REASONS SET FORTH IN EDWARDS, WE WILL COMPLY

8  WITH YOUR ORDER.

9     BUT WE DO FOR THE RECORD, WOULD LIKE FOR EACH

10  CASE IN WHICH THAT -- WE HAVE THAT OBLIGATION, THERE TO

11  BE AN ORDER IN THAT CASE NOTING THAT WE HAVE OBJECTED.

12     THE COURT:  HERE IS THE DILEMMA.  AND YOU ALL

13  ARE DOING AN EXCELLENT JOB.  HERE IS THE DILEMMA.  IF THE

14  RULING IS, IN FACT, GROUNDED IN THE CONSTITUTION AND A

15  CONSTITUTIONAL RIGHT, THEN I DON'T HAVE THE DISCRETION TO

16  APPLY IT OR NOT APPLY IT.  I MEAN, I THINK THAT IS TRUE.

17     IF IT'S A FUNDAMENTAL CONSTITUTIONAL RIGHT

18  THAT IS THE SUPREME LAW OF THE LAND, THEN MY INVOLVEMENT

19  IS RELEVANT IN IT.  AND ALSO NO OTHER JUDGE, IF IT WAS

20  FOUND TO BE VALID, --

21     MR. ACKER:  THAT'S CORRECT, YOUR HONOR.

22     THE COURT:  -- NO OTHER JUDGE WOULD BE ABLE TO

23  ELECT TO HAVE A RULE OR HAVE SOME OTHER DISPOSITION THAT

24  WAS CONTRARY TO THAT.

25     MR. ACKER:  THAT'S CORRECT, YOUR HONOR.  BUT

1   BECAUSE NO APPELLATE COURT HAS RULED ON THAT YET, WE JUST

2   WANT TO PRESERVE FOR THE RECORD THAT WE HAVE OBJECTED.

3   WE DO NOT AGREE WITH THAT.

4          THE COURT:  RIGHT.  BUT I THINK MY POSITION

5   WOULD BE THAT YOU HAVE GOT TO START SOMEWHERE AND MOST

6   CONSTITUTIONAL RIGHTS GET STARTED IN DISTRICT COURT,

7   EITHER BY DENYING THEM OR AFFIRMING THEM.  I MEAN, I AM

8   HOPEFUL THAT -- WELL, GIDEON (PHONETIC) WAS A STATE CASE,

9   BUT, ANYWAY.

10         MR. ACKER:  WELL, YOUR HONOR, THE ORDER THAT

11  YOU ENTERED IN EDWARDS, WE DON'T REALLY BELIEVE IS

12  APPEALABLE BECAUSE HE HAS BEEN RELEASED.

13         THE COURT:  I SEE.  SO IT MIGHT BE THE NEXT

14  TIME I RULE ON IT.

15         MR. ACKER:  IT MAY BE, YOUR HONOR.

16         THE COURT:  AND -- NOT TRIPP.  WHAT IS HIS

17  NAME?  TIMMS.  HE FILLED ONE TODAY.

18         MR. ACKER:  HE DID, YOUR HONOR.  SO IT MAY BE

19  THAT THAT IS THE CASE IN WHICH YOU DEAL WITH THAT.

20         THE COURT:  AND HE IS WELL KNOWN TO THE

21  APPELLATE COURT.

22         MR. ACKER:  THAT'S CORRECT, YOUR HONOR.

23         THE COURT:  SO THAT MIGHT BE A GOOD VEHICLE TO

24  TAKE UP.

25         MR. ACKER:  BUT EVEN ABSENT THAT, IF YOU ENTER

1    AN ORDER IN ANY OF THESE CASES AND IT DOESN'T NEED TO BE

2    A LONG ORDER, YOU CAN REFER TO EDWARDS, BUT IF YOU

3    ENTERED SUCH AN ORDER NOTING OUR OBJECTION, WE WILL

4    COMPLY.

5            THE COURT:  AND ONE OF YOUR -- I AM NOT

6    SPEAKING FOR YOU, BUT JUST THINKING OUTLOUD -- ONE OF

7    YOUR CONCERNS PROBABLY IS THAT THE EDWARDS' BRADY ORDER

8    INHIBITS THE FULL DEVELOPMENT OF INFORMATION BECAUSE IT

9    ACTS AS A BARRIER OR DANGER ZONE FOR YOU TO AGGRESSIVELY

10   PURSUE EVIDENCE IN THE CASE AND BUILD SUBSTANTIVE CASE

11   WHEN IT MIGHT END UP UNDOING YOUR CASE.

12           MR. ACKER:  THAT'S CORRECT, YOUR HONOR.

13           THE COURT:  BUT THE COUNTERWEIGHT TO THAT IS

14   THAT WE ARE ALL IN THE BUSINESS OF TRUTH AND JUSTICE, AND

15   SO IF YOUR RESOURCES END UP PRODUCING SOMETHING THAT IS

16   CONTRARY TO THE POSITION YOU NOW TAKE, THAT IS WHERE THE

17   CASE WENT.

18           MR. ACKER:  WE UNDERSTAND.  AND YOUR HONOR, AS

19   YOUR HONOR POINTED OUT IN THE EDWARDS CASE, THIS IS A

20   MATTER OF FIRST IMPRESSION.  IT'S CERTAINLY AN IMPORTANT

21   ISSUE.  AND AS WE SAID, AS LONG AS THERE IS AN ORDER IN A

22   PARTICULAR CASE NOTING THAT WE HAVE OBJECTED, BUT

23   ORDERING US TO COMPLY WITH YOUR ORDER IN EDWARDS, WE WILL

24   DO SO.

25           THE COURT:  AND YOU KNOW, I MAY BE TOO

1   NEARSIGHTED ABOUT IT BECAUSE I HAVE BEEN INVOLVED WITH

2   IT, BUT IF IT'S GOT ANY MEANING TO IT, IT WOULD BE

3   SOMETHING THAT WE ALL NEED TO KNOW.  I DON'T KNOW HOW

4   EAGER THE APPELLATE COURTS ARE GOING TO BE TO CONTINUE TO

5   REVISIT THIS WHOLE 4248 SITUATION.

6          BUT SO THE ANSWER TO MY QUESTION FROM A FEW

7   MINUTES AGO THAT I WANDERED AWAY FROM IS THAT THE

8   INFORMATION IS PROVIDED COMPREHENSIVELY IN GROSS BUT NOT

9   IDENTIFIED AS BEING FAVORABLE OR UNFAVORABLE?

10          MR. ACKER:  THAT'S CORRECT, YOUR HONOR.

11          THE COURT:  OKAY.

12          MR. ACKER:  AND I DON'T BELIEVE -- I DON'T

13  HAVE THE CITE, BUT I BELIEVE THERE IS A FOURTH CIRCUIT

14  CASE DEALING WITH THAT ISSUE THAT SAYS, FOR EXAMPLE, IF

15  YOU JUST PROVIDE AN OPEN FILE DISCOVERY, THAT YOU HAVE

16  COMPLIED WITH BRADY AS LONG AS THE MATERIAL IS WITHIN

17  THAT MASS OF INFORMATION.

18          THE COURT:  SO IN MR. EBEL'S CASE, HE HAS HAD

19  YOUR DISCOVERY AND THEN WHAT HAPPENS?  THERE IS A 60-DAY

20  PERIOD UNDER THE STANDING ORDER THAT OPERATES AND THEN HE

21  HAS TO MAKE A DISCLOSURE.

22          MR. ACKER:  THAT'S CORRECT, YOUR HONOR.

23          THE COURT:  AND THAT WILL HAPPEN IN JUNE, IF

24  HE HAS A LAWYER.

25          MR. ACKER:  THAT WOULD BE FINE.  YES.  I THINK

1    THAT IS CORRECT, YOUR HONOR.  WE DO, BECAUSE THESE CASES

2    UNDER YOUR HONOR ARE JUST A LITTLE BIT DIFFERENT IN TERMS

3    OF THE SCHEDULING, I DO THINK OUR SECOND EXPERT REPORT IS

4    DUE IN TWO WEEKS, AND WE WOULD DELIVER THAT, SO IT WOULD

5    BE 60 DAYS FROM THAT DATE, UNLESS YOUR HONOR -- I THINK

6    YOUR HONOR SHORTENED IT IN SOME CASES, BUT WE WILL DO

7    WHATEVER YOUR HONOR SAYS.

8              THE COURT:  YES.  AND THEN, IN THEORY, WE ARE

9    ON A PATH TOWARDS TRIAL THEN.

10             MR. ACKER:  THAT'S CORRECT, YOUR HONOR.

11             THE COURT:  OKAY.  WELL, THANK YOU.  AND I

12   WILL CONTINUE HIM OVER TO 2:00 O'CLOCK AND SEE IF WE CAN

13   GET MR. HAWES INVOLVED IN THE CASE.

14             MR. ACKER:  DO YOU NEED MR. COOPER TO COME

15   BACK AT 2:00 O'CLOCK?

16             THE COURT:  NO, HE DOESN'T NEED TO COME BACK.

17   I WILL RELEASE MR. COOPER FROM THE CASE, AND IN THE

18   MEANTIME, I WOULD ASK THE CLERK TO PROVIDE YOU WITH THE

19   DOCUMENTS THAT YOU HAVEN'T RECEIVED YET.

20             MR. GRAY:  THANK YOU, YOUR HONOR.

21             THE COURT:  SO MR. EBEL CAN BE RELIEVED UNTIL

22   2:00 O'CLOCK.

23             THE RESPONDENT:  THANK YOU, YOUR HONOR.

24             (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED

25   UNTIL LATER IN THE DAY.)

1          (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE

2     HELD IN THE AFTERNOON.)

3          MR. HAWES:  I TALKED WITH HIS WIFE INITIALLY

4     WHEN THEY WERE NOT SATISFIED WITH THE OTHER ATTORNEY'S

5     PERFORMANCE.  SHE ASKED IF I WOULD BE WILLING TO TAKE

6     OVER THE CASE, AND I SAID IF I WAS APPOINTED THE CASE, I

7     WOULD CERTAINLY LOOK INTO THE POSSIBILITY OF TAKING IT

8     OVER.

9          MEANWHILE, I HAVE LOOKED OVER WHAT I HAVE TO

10    DO.  I FEEL LIKE I DON'T HAVE ENOUGH TIME TO DEVOTE TO

11    HIS CASE TO DO A GOOD JOB, AND SO I AM ASKING NOT TO BE

12    APPOINTED ON THE CASE, AND I HAVE ACTUALLY TALKED TO HER

13    TODAY ABOUT THAT.

14          THE COURT:  OKAY.  WELL, WE WILL FIND SOMEBODY

15    ELSE.

16          MR. HAWES:  THANK YOU.

17          THE COURT:  YOU ARE FREE TO LEAVE.

18          DID WE LEAVE ANY ISSUES UNRESOLVED THIS

19    MORNING THAT WE WERE GOING TO REVISIT, OR ARE WE GOOD ON

20    THAT?

21          MR. ACKER:  I THINK THE ONLY THING, YOUR

22    HONOR, IS IF YOUR HONOR ENTERS AN ORDER ABOUT BRADY.

23          THE COURT:  YES.

24          MR. ACKER:  YOUR HONOR DID ALSO ASK ABOUT THE

25    CASES THAT ARE ON APPEAL, AND I HAVE SPOKEN TO THE BUREAU

1    OF PRISONS AND THEY ARE GOING TO GO AHEAD AND BEGIN THE

2    PROCESS OF REVIEWING THOSE AS WELL.

3              THE COURT:  OKAY.  AND DID WE PUT VIGIL TO

4    REST AS FAR AS YOU ARE CONCERNED?

5              MR. ACKER:  YES, YOUR HONOR, I THINK SO.

6              THE COURT:  DID YOU FIGURE OUT HOW MANY CASES

7    WERE RELEASED?

8              MR. ACKER:  I HAVE NOT CHECKED THAT, YOUR

9    HONOR.  I DO BELIEVE IT'S ABOUT EIGHT OR TEN.

10             THE COURT:  MR. EBEL, YOU CAN HAVE A SEAT.

11             ARE THERE ANY OTHER JUDICIAL OFFICERS IN THE

12   DISTRICT WHO ARE BRINGING THE DETAINEES TO THE

13   COURTHOUSE?  SO FAR?

14             MR. ACKER:  YES.  JUDGE GATES, I BELIEVE, DID

15   AT SOME OF THE HEARINGS THAT HE HELD, OR AT LEAST HE

16   TALKED ABOUT IT, AND I THINK HE DID.

17             THE COURT:  IS HE STILL DOING THAT?

18             MR. ACKER:  WE MET WITH HIM TODAY AT 1:00

19   O'CLOCK AND HE IS SETTING STATUS CONFERENCES WEEKLY ON

20   ALL THE CASES THAT HE IS RESPONSIBLE FOR, BUT HAS NOT

21   INDICATED WHETHER OR NOT THE RESPONDENTS WILL BE

22   PHYSICALLY PRESENT.  I THINK HE IS TAKING THAT ON A CASE

23   BY CASE BASIS.

24             THE COURT:  AND WHAT DOES HE HAVE, ABOUT 80

25   CASES?

1          MR. ACKER:  I THINK IT'S ALL THE CASES OTHER

2   THAN YOUR CASES, AND IT'S PROBABLY ABOUT 60 OR 70 THAT HE

3   IS DOING THE NON-DISPOSITIVE SCHEDULING ISSUES AND

4   NON-DISPOSITIVE MOTIONS.

5          THE COURT:  DO YOU THINK IT'S THAT MANY OR

6   MORE?

7          MR. ACKER:  WELL, THERE WERE ORIGINALLY ABOUT

8   90-SOME CASES.

9          THE COURT:  I HAD ABOUT 23.

10         MR. ACKER:  SO THAT WOULD BE ABOUT 70, MINUS

11  THE ONES THAT HAVE ALREADY BEEN RELEASED.

12         THE COURT:  SO HE HAS ABOUT 70 CASES.

13         MR. ACKER:  I BELIEVE SO, YOUR HONOR.

14         THE COURT:  MAYBE I SHOULD TAKE SOME OF HIS

15  CASES, EVEN IT OUT.

16         MR. ACKER:  I THINK IT WAS DIVIDED FAIRLY

17  EVENLY, EXCEPT FOR JUDGE HOWARD WHO TOOK THE SMALLER

18  LOAD.

19         THE COURT:  OKAY.  I CAN VOLUNTEER.  I CAN DO

20  FIRST APPEARANCES AND THINGS LIKE THAT, AND DETENTION

21  HEARINGS, A PRETTY UTILITY IN-FIELDER HERE.  I WILL BRING

22  THAT UP.

23         MR. HAWES IS NOT ABLE TO HANDLE YOUR CASE WITH

24  HIS PRACTICE.  HE HONESTLY SAID THAT HE DOESN'T HAVE THE

25  TIME TO DEVOTE TO IT, SO I AM GOING TO APPOINT ANOTHER

1    LAWYER TO REPRESENT YOU, AND SEE IF YOU CAN MAKE PROGRESS

2    WITH THE OTHER LAWYER.

3         MEANTIME, YOUR DISCOVERY IS ONGOING, AS WE

4    TALKED ABOUT THIS MORNING, AND I KNOW YOU DON'T WANT TO

5    LOSE YOUR PLACE IN LINE; RIGHT?

6         THE RESPONDENT:  WELL, MY MOST BIGGEST CONCERN

7    I HAVE IS ADDRESSING -- HOW CAN I PUT IT -- THE

8    EVALUATION THAT WAS MADE BY BRENT THIBAULT.  NOW THAT IS

9    THE SOLE CRITERIA AT THE MOMENT ON WHICH CERTIFICATION

10   WAS MADE, BRENT THIBAULT BEING THIS SPECIALIST AT DEVENS.

11   PART OF THE REPORT OF WHICH YOU HAVE THERE IS HIS

12   PROBATION RECOMMENDATIONS.

13        NOW, THE BALANCE OF THIS REPORT IS -- AND I

14   DON'T SAY THIS LIGHTLY, SIR -- IT'S PERJURATVIE.  IT'S A

15   WORK OF FICTION, AND WE CAN PROVE THIS.  AND -- BUT THE

16   ONLY PLACE IT CAN BE PROVED, SIR, IS AT A HEARING, AT A

17   TRIAL, WHICH IS WHAT I MOST CERTAINLY WANT TO PURSUE.

18        NOW, MY WIFE IS HERE.  SHE HAS BEEN HERE AT

19   THE FIRST HEARING, AT THIS HEARING, TOTALLY SUPPORTIVE,

20   WISHES TO WORK ACTIVELY WITH REPRESENTING COUNSEL, WISHES

21   TO ALSO INSTITUTE AND IS IN THE PROCESS OF INSTITUTING A

22   SUIT OF SLANDER, OF DEFAMATION OF CHARACTER AND OTHER

23   CONSIDERATIONS AGAINST BRENT THIBAULT WHO BROUGHT HER

24   INTO THIS SITUATION FOR NO VALID REASON WHATSOEVER, WHICH

25   AGAIN, CAN BE PROVEN, BUT ONLY CAN BE PROVEN THROUGH A

1    HEARING, THROUGH A TRIAL.

2            THESE ARE THE CONCERNS I HAVE.  IT'S MORE THAN

3    A CERTIFICATION, OF WHETHER I DESERVE TO BE CERTIFIED.

4    IT'S WHERE, AS YOU SAID EARLIER, TRUTH EXISTS AND WHERE

5    JUSTICE EXISTS.  I WANT THE TRUTH AND THAT IS ALL I WANT.

6    IF THE TRUTH GET ME CERTIFIED -- COMMITTED, I HAVE NO

7    PROBLEM.  IF THE TRUTH GETS ME COMMITTED, I HAVE NO

8    PROBLEM WITH THAT AT ALL.

9            ALL I WANT TO DO IS GET THE TRUTH INTO COURT,

10   AND AT THE MOMENT, THE PAPERWORK THAT PRESENTLY EXISTS IS

11   NOT THE TRUTH, SIR.  I HAVE NOT SEEN THIS EVALUATION,

12   SIR, THAT SOMEONE IS GOING TO PRODUCE WHO HAS NEVER SEEN

13   ME, NEVER SPOKEN TO ME, AND LOOKS AT THE SAME SPURIOUS

14   INFORMATION THAT HAS BEEN IN MY FILE SINCE BRENT THIBAULT

15   PUT IT THERE A YEAR OR SO AGO.

16           THE CERTIFICATION, THE FIRST EXPERT WITNESS, I

17   BELIEVE HER NAME IS CUNIC, THAT IS A REPRINT, SIR,

18   VERBATIM, OF THE BRENT THIBAULT'S FICTION.  THAT IS A

19   CERTIFICATION DOCUMENT.  THE CERTIFICATION PEOPLE, THE

20   PANEL, WENT THROUGH IN WASHINGTON WHEN THEY TRIED TO GET

21   ME CERTIFIED, POLICE DEPARTMENTS, THEY WENT THROUGH

22   EVERYTHING THEY COULD TO TRY TO FIND SOME WAY, SOME

23   EVIDENCE, SOMETHING THEY COULD COME UP WITH.  THAT IS IN

24   DISCOVERY.  THEY CAME UP WITH NOTHING.  THAT IS IN

25   DISCOVERY.

1    WHAT THEY CAME UP WITH IS BRENT THIBAULT'S

2    DOCUMENTS, REPORT, EVALUATION, WHICH IS SPURIOUS, IS

3    VINDICTIVE, AND PURE FICTION -- I WON'T SAY PURE -- A

4    GOOD DEAL OF IT.  AND THIS, AGAIN, CAN BE PHYSICALLY AND

5    ABSOLUTELY PROVEN, AND THAT'S ALL I WISH TO DO.  AND

6    THAT'S ALL I SEE.

7    AND SO IF A HEARING -- IF IT TAKES SIX MONTHS,

8    NINE MONTHS, A YEAR, TO WAIT FOR A TRIAL, I HAVE NO

9    PROBLEM WITH THAT WHATSOEVER.

10    I AM NOT INTERESTED IN THE TIME ELEMENT HERE.

11    I AM INTERESTED IN ALL OF THIS BEING RESOLVED AND FOR

12    ONCE THE TRUTH COMING OUT.  THAT'S ALL I CARE ABOUT

13    BECAUSE IT'S MY REPUTATION.  IT MY WIFE'S REPUTATION.

14    IT'S HER SUPPORT OF ME THROUGHOUT ALL OF THIS.  AND SHE

15    HAS BEEN -- FOR A WOMAN TO STAY WITH SOMEONE IN THIS

16    SITUATION FOR GOING ON 11 YEARS, AND THEN FOR THIBAULT TO

17    USE THAT AGAINST HER, WHICH HE DOES IN THE MOST HOSTILE

18    WAY, IS REPREHENSIBLE.  IT'S ABSOLUTELY REPREHENSIBLE.

19    AND EVERY EVIL BIT OF IT IS FULLY RECORDED IN DISCOVERY.

20    THE COURT:  ALL RIGHT.  WE'LL APPOINT YOU

21    COUNSEL, AND AS I SAID, YOU SHOULD PAY ATTENTION TO YOUR

22    DISCOVERY SCHEDULE.

23    THE RESPONDENT:  YES, SIR.

24    THE COURT:  OKAY.  THAT'S ALL.  THANK YOU, MR.

25    ACKER AND MR. GRAY.

1          THE RESPONDENT:  THANK YOU, YOUR HONOR.

2          THE COURT:  THANK YOU.

3          (WHEREUPON, THE PROCEEDING WERE ADJOURNED.)

4

5

6

7

8                         CERTIFICATE

9

10         THIS IS TO CERTIFY THAT THE FOREGOING

11   TRANSCRIPT OF PROCEEDINGS TAKEN IN THE UNITED STATES

12   DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF

13   THE SHORTHAND NOTES OF THE PROCEEDINGS TAKEN BY ME IN

14   MACHINE SHORTHAND AND TRANSCRIBED BY COMPUTER UNDER MY

15   SUPERVISION.

16         DATED THIS 19TH DAY OF MAY, 2011.

17

18

19                            /S/ SHARON K. KROEGER
                             COURT REPORTER
20

21

22

23

24

25