1             UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NORTH CAROLINA
2                   WESTERN DIVISION

3

4   UNITED STATES OF AMERICA,      )
                                   )
5                                  )
                    PETITIONER,    )
6                                  )
            VS                     ) CASE NO. 5:10-HC-2124-BO
7                                  )
                                   )
8   PETER M. EBEL,                 )
                                   )
9                   RESPONDENT.    )

10

11

12

13                    STATUS CONFERENCE

14                    JANUARY 7, 2011

15          HONORABLE TERRENCE W. BOYLE, PRESIDING

16

17

    APPEARANCES:
18
         MR. R. A. RENFER, JR.
19       ASSISTANT UNITED STATES ATTORNEY
         310 NEW BERN AVENUE
20       RALEIGH, NC   27601
         (FOR THE GOVERNMENT)
21
         MR. EDWARD D. GRAY
22       ASSISTANT UNITED STATES ATTORNEY
         310 NEW BERN AVENUE
23       RALEIGH, NC   27601
         (FOR THE GOVERNMENT)
24

25

1    APPEARANCES:  (CONT.)

2         MR. THOMAS P. MCNAMARA
          FEDERAL PUBLIC DEFENDER
3         150 FAYETTEVILLE STREET
          SUITE 450
4         RALEIGH, NC   27601
          (FOR THE RESPONDENT)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    SHARON K. KROEGER, COURT REPORTER
      MACHINE SHORTHAND REPORTER, COMPUTER AIDED TRANSCRIPTION

1          THE COURT:  MR. EBEL.  I KNOW IT WILL BE

2     INTERESTING WHEN WE GET TO THE SIGNS AND I HOPE IT WON'T

3     BE TOO LONG BEFORE WE DO THAT BECAUSE THERE ARE DIFFERENT

4     DOMAINS, LIKE THE LAST PERSON IS A -- I MEAN HIS

5     HISTORICAL PICTURE IS HETEROSEXUAL RAPE, ATTACK AND RAPE.

6          THIS PERSON HAS A COMPLETELY DIFFERENT

7     BACKGROUND AND IT WILL BE INTERESTING TO SEE IF THE

8     SCIENCE, THE PSYCHOLOGISTS SAY THAT ALL OF THESE TYPES OF

9     ABERRANT BEHAVIOR LEAD TO THE SAME MENTAL ILLNESS OR IF

10    THE MENTAL ILLNESSES ARE DIFFERENT BASED ON WHAT YOUR

11    CRIME OF CHOICE OR DEVIATION OF CHOICE IS.

12          MR. RENFER:  I THINK -- I AM NOT AN EXPERT IN

13    THIS AT THIS POINT AT ALL, BUT I THINK YOU WILL FIND THAT

14    THEY LEAD TO DIFFERENT DIAGNOSES AT VARIOUS -- WITH

15    VARIOUS TYPES OF PERSONALITIES, AND SO IT'S FAIRLY

16    COMPLEX.

17          THE COURT:  AND DIFFERENT PROGNOSIS ABOUT

18    RECOVERY OR REHABILITATION.

19          MR. RENFER:  I DON'T -- I CAN'T RESPOND TO

20    THAT.

21          THE COURT:  BUT THAT MAY WELL BE THE CASE?

22          MR. RENFER:  IT COULD BE.  I JUST DON'T KNOW

23    THAT, YOUR HONOR.

24          THE COURT:  OKAY.  THIS IS MR. PETER EBEL.  IS

25    IT EBEL OR EBEL?

1          MR. MCNAMARA:  IT'S EBEL, YOUR HONOR, PETER

2    EBEL.

3          THE COURT:  WHERE ARE YOU FROM?

4          THE RESPONDENT:  I LIVE OVERSEAS.  MY LAST

5    ADDRESS WAS IN ALBANIA, SIR, WHERE I WAS WORKING.

6          THE COURT:  WHERE WERE YOU FROM IN AMERICA?

7          THE RESPONDENT:  I WAS BORN IN NEW JERSEY,

8    RAISED IN WESTCHESTER, SIR, UPSTATE NEW YORK.

9          THE COURT:  AND GREW UP THERE?

10          THE RESPONDENT:  UNTIL I WAS 15, YES, SIR.

11          THE COURT:  AND YOU WERE SENTENCED TO A 120

12    MONTHS SENTENCE AND THAT IS THE SENTENCE THAT YOU DID?

13          THE RESPONDENT:  CORRECT, SIR.

14          THE COURT:  WHERE DID THAT ARISE?

15          THE RESPONDENT:  WHERE?

16          THE COURT:  WHERE WERE YOU SENTENCED TO THAT?

17          THE RESPONDENT:  AT LOS ANGELES, SIR.

18          THE COURT:  IN CALIFORNIA?

19          THE RESPONDENT:  YES, SIR.

20          THE COURT:  IN CENTRAL CALIFORNIA?

21          THE RESPONDENT:  YES, SIR.

22          THE COURT:  CENTRAL DISTRICT?

23          THE RESPONDENT:  I BELIEVE SO.

24          THE COURT:  AND THAT WAS IN 2000 OR --

25          THE RESPONDENT:  WELL, I WAS ARRESTED THE WEEK

1    AFTER SEPTEMBER 11, SEPTEMBER 11, 2001.  I WAS DETAINED

2    ON A CUSTOMS HOLD AT LOS ANGELES INTERNATIONAL AIRPORT.

3             THE COURT:  AND WERE YOU LIVING IN CALIFORNIA

4    OR LIVING SOMEWHERE ELSE?

5             THE RESPONDENT:  NO.  I WAS BRINGING THREE

6    CHILDREN IN FOR MEDICAL TREATMENT AT UCLA.

7             THE COURT:  FROM ALBANIA?

8             THE RESPONDENT:  YES, SIR.

9             THE COURT:  AND SO YOU WERE INDICTED AND PLED

10   GUILTY, I AM ASSUMING?

11            THE RESPONDENT:  YES, SIR.

12            THE COURT:  AND WERE SENTENCED TO A 120 MONTHS

13   SENTENCE?

14            THE RESPONDENT:  CORRECT, SIR.

15            THE COURT:  AND YOU DID YOUR SENTENCE AT

16   VARIOUS FACILITIES?

17            THE RESPONDENT:  NO, SIR.  AT FMC-DEVINS IN

18   MASSACHUSETTS.

19            THE COURT:  SO YOU WERE AT DEVENS THE ENTIRE

20   TIME?

21            THE RESPONDENT:  CORRECT.

22            THE COURT:  WERE YOU IN TREATMENT THERE?

23            THE RESPONDENT:  NO, SIR.

24            THE COURT:  YOU WERE JUST THERE?

25            THE RESPONDENT:  YES, SIR.

```
 1              THE COURT:  IN THE GENERAL POPULATION?

 2              THE RESPONDENT:  YES, SIR.

 3              THE COURT:  WORKING?

 4              THE RESPONDENT:  YES, SIR.

 5              THE COURT:  AND AS -- DID YOU HAVE HISTORY OF

 6    INFRACTIONS?

 7              THE RESPONDENT:  NO, SIR.

 8              THE COURT:  AND AS -- YOU WERE CERTIFIED THIS

 9    YEAR, THIS PAST YEAR; CORRECT?

10              THE RESPONDENT:  CORRECT, SIR.

11              MR. MCNAMARA:  IT WAS JUNE 21, I BELIEVE, YOUR

12    HONOR.

13              THE COURT:  OF 2010?

14              THE RESPONDENT:  2010.  IF I MAY SAY HERE,

15    YOUR HONOR, WHAT PUZZLES ME AND MY WIFE ABOUT THE

16    CERTIFICATION, I WAS FORMERLY TOLD IN DECEMBER 2009 THAT

17    I WAS CLEARED BY THE ADAM WALSH ACT.  I WAS BEING

18    PROCESSED OUT DURING JUNE TO BE -- BEFORE THE STREET.  MY

19    WIFE HAD BEEN IN TOUCH WITH SENATOR WEBB WITH RESPECT TO

20    HAVING MY CASE TRANSFERRED FROM CALIFORNIA TO WHERE SHE

21    LIVED IN NORFOLK.  SHE WAS IN TOUCH WITH SENATOR WEBB,

22    WHO WAS ASSISTING IN THIS.

23              SHE ALSO -- SENATOR WEBB RECEIVED A LETTER

24    FROM THE WARDEN OF DEVENS STATING THAT THE BUREAU OF

25    PRISONS HAD NO OBJECTION TO THE CASE BEING TRANSFERRED,
```

1   THAT I WOULD BE RELEASED TO THE STREET JUNE 22.  MY WIFE

2   WAS INFORMED THAT -- I MEAN, I WASN'T INFORMED OF MY

3   AMERICAN FLIGHT NUMBER.  MY WIFE WAS INFORMED BY THE

4   SECRETARY OF PRISON THAT SHE COULD EITHER FLY WITH ME OUT

5   TO CALIFORNIA OR MEET ME THERE.

6           MY WIFE THEN MADE RESERVATIONS AT A MOTEL,

7   PURCHASED A TICKET TO MEET ME THERE.  ALL OF THIS, I WAS

8   BEING PROCESSED TO THE STREET FOR RELEASE.  AND THEN,

9   SIR, ON WEDNESDAY, JUNE 9, I WAS INFORMED AT NOON TO PACK

10  UP.  I HAD NO KNOWLEDGE OF THIS, NO NOTHING.  I KNEW

11  NOTHING ABOUT IT.  JUNE -- AT 3:30 IN THE MORNING, I WAS

12  SHACKLED, HANDCUFFED, AND LITERALLY THROWN IN THE BACK OF

13  THE CAR AND DRIVEN NON-STOP TO BUTNER, WHICH IS UNHEARD

14  OF TO MY KNOWLEDGE IN THE B.O.P.

15          THE COURT:  FROM WHERE?  FROM DEVENS?

16          THE RESPONDENT:  FROM DEVENS, DIRECT, NON-STOP

17  IN THE BACK OF THE CAR TO BUTNER.

18          AT BUTNER, I WAS NOT TOLD ANYTHING OF WHAT

19  HAPPENED.  THE FOLLOWING THURSDAY, FIVE DAYS BEFORE THE

20  TUESDAY OF MY RELEASE, A PSYCHOLOGIST SIMPLY INFORMED ME

21  YOU ARE GOING TO BE CERTIFIED, WE WERE SUPPOSED TO SEE

22  YOU MONDAY, I WAS BUSY, I COULDN'T REACH YOU UNTIL TODAY,

23  I HAVE ONLY TOMORROW TO GET THE PAPERS READY BECAUSE THEY

24  HAVE TO BE IN WASHINGTON ON MONDAY BECAUSE TUESDAY IS

25  YOUR RELEASE DATE.  THAT WAS IT.  NO QUESTIONS, NO

1    NOTHING.  I WAS JUST INFORMED OF THEN.

2         THEN ON THE MONDAY -- I AM SORRY, YOUR

3    HONOR -- ON THE TUESDAY, JUNE 22, I WAS HANDED MY

4    CERTIFICATION PAPERS THAT HAD BEEN PROCESSED ON MONDAY,

5    THE 21ST, AND THAT IS WHEN THE CERTIFICATION STARTED.

6    AND I WAS UNABLE TO COMMUNICATE WITH MY WIFE.  SHE WAS

7    FRANTIC, OF COURSE, WONDERING WHAT HAPPENED.  I WAS

8    WONDERING WHAT HAPPENED.

9         THERE WAS NO FOREWARNING OF THIS.  NOTHING.

10    JUST (RESPONDENT SNAPS FINGERS)  YOU ARE GOING TO BE

11    RELEASED TO THE STREET, AND THEN NOW I AM DOWN AT BUTNER,

12    SIR.

13         THE COURT:  DO YOU HAVE A TERM OF SUPERVISED

14    RELEASE?

15         THE RESPONDENT:  THREE YEARS, SIR.

16         THE COURT:  OUT OF THE DISTRICT IN CALIFORNIA?

17         THE RESPONDENT:  YES, SIR.  AND THIS IS WHAT

18    MY WIFE AND SENATOR WEBB WAS TRYING TO GET TRANSFERRED TO

19    VIRGINIA AT THE TIME OF THE CERTIFICATION THAT I WAS

20    PULLED FROM DEVENS TO BUTNER.

21         NOW, I WOULD LIKE TO SAY, IF I MAY, THAT TWO

22    DAYS AGO, WE WERE TAKEN FROM BUTNER AND PLACED IN COUNTY

23    JAIL, AND THE FIRST NIGHT WE SLEPT ON THE FLOOR.  LAST

24    NIGHT WE WERE AWOKEN AT 3:30 IN THE MORNING TO BE BROUGHT

25    TO COURT.

1        NOW, I SERVED MY SENTENCE, YOUR HONOR, AND I

2    CERTAINLY PAID MY DEBT TO SOCIETY.  I ADMITTED TO MY

3    GUILT.  I COOPERATED WITH THE AUTHORITIES.  I HAVE A

4    CLEAN PRISON RECORD, A CLEAN WORK RECORD.  AND YET FOR

5    THE LAST SEVEN MONTHS, I HAVE BEEN INCARCERATED IN THE

6    MARYLAND UNIT WITH LESS FREEDOMS AND/OR MORE PUNITIVE

7    ENVIRONMENT THAN EXISTED IN DEVENS OR EXISTED IN THE

8    GENERAL POPULATION AT BUTNER.

9        NOW, IF THIS IS AMERICAN JUSTICE, YOUR HONOR,

10    THEN I WOULD SUBMIT THAT JUSTICE IS ON ITS DEATH BED.  IF

11    THIS IS AMERICAN JUSTICE, I WOULD SUBMIT THAT JUSTICE HAS

12    BEEN DENIED.

13        YOUR HONOR, THERE ARE LESS -- THERE ARE JUST

14    UNDER 90 OTHER CIVIL DETAINEES, AS THEY CALL US, AT

15    MARYLAND UNIT, BUT WE ARE BEING TREATED WITH GREATER

16    PUNITIVE MEASURES AND RESTRICTIONS THAN FEDERAL INMATES

17    UNDER THE GUISE OF CIVIL DETAINEES, WHATEVER THAT MEANS.

18        THE -- THERE ARE PEOPLE THERE WHO HAVE BEEN --

19    THERE ARE PEOPLE AT MARYLAND UNIT THAT HAVE BEEN THERE

20    FIVE YEARS, FIVE YEARS AS A CIVIL DETAINEE, WITH

21    ABSOLUTELY NOTHING HAPPENING.

22        A GENTLEMAN A COUPLE OF WEEKS AGO WAS RELEASED

23    FROM MARYLAND UNIT.  HE HAD BEEN THERE FOR JUST UNDER

24    FOUR YEARS.  AND SUDDENLY ONE DAY HE IS TOLD PACK UP, HE

25    IS LEAVING.  WHAT HAPPENED IS PROSECUTION HAD LOOKED AT

1    HIS DISCOVERY.  THEY HAD LOOKED AT HIS CHARGES.  THEY HAD

2    LOOKED AT CERTIFICATION, AND THEY SAID THIS IS NOT GOING

3    TO FLY, GET THAT MAN OUT OF HERE.

4         NOW, THAT MAN SPENT JUST UNDER FOUR YEARS AT

5    MARYLAND UNIT DEPRIVED OF HIS LIBERTIES, AND THEN

6    SUDDENLY PROSECUTION OF THE GOVERNMENT, WHOEVER DECIDES

7    IF THEY SINK OR FLY, AND SENDS HIM BACK TO ALASKA.

8         NOW, AGAIN, YOUR HONOR, HOW CAN ANYONE SAY

9    THAT THIS HAS ANY MEANING AND JUSTICE?  OKAY.  IT'S NOT A

10   CRIMINAL CASE.  IT'S A CIVIL CASE.  IF I HAD MURDERED

11   SOMEBODY, MY CASE WOULD HAVE BEEN DEALT WITH BY NOW.  I

12   HAVEN'T DONE A THING NOR HAVE THOSE PEOPLE THERE

13   FOLLOWING SERVING THEIR SERVICES, PAYING THE DEBT THAT

14   WAS PRESCRIBED BY THE COURT.  WE HAVE ALL DONE THAT.

15   EVERYONE AT MARYLAND UNIT HAS OFFICIALLY PAID OUR DEBT AS

16   WE EITHER AGREED, OR MOST OF US IN A PLEA AGREEMENT,

17   MAYBE A COUPLE IN TRIAL, I DON'T KNOW.

18        AND THE RESULT OF IT IS WE ARE STILL

19   INCARCERATED.  I AM LUCKY.  I HAVE ONLY BEEN THERE SEVEN

20   MONTHS.  THERE ARE PEOPLE THERE THAT HAVE BEEN THERE FOR

21   FIVE YEARS.  I DON'T KNOW HOW THEY SURVIVED IT.  AND AS I

22   SAY, YOUR HONOR -- AND THEN I WILL BE QUIET -- THE

23   CONDITIONS THAT WE LIVE UNDER ARE MORE PUNITIVE AND

24   RESTRICTIVE THAN THE GENERAL POPULATION.

25        AND IF WE ARE SUPPOSED TO BE CIVILLY DETAINED

1  OR CIVIL DETAINEES, WHY ARE WE IN HANDCUFFS AND SHACKLES

2  AND PRISON UNIFORMS WHEN WE ARE SUPPOSED TO HAVE OUR

3  FREEDOM, SIR?  THANK YOU FOR HEARING ME OUT, SIR.

4          THE COURT:  HAVE YOU READ THE DISTRICT COURT'S

5  TIMMS OPINION?

6          THE RESPONDENT:  I AM SORRY, SIR?

7          THE COURT:  HAVE YOU READ THIS DISTRICT

8  COURT'S OPINION IN TIMMS?

9          THE RESPONDENT:  YES, SIR.

10          THE COURT:  IT SAYS EVERYTHING YOU JUST SAID.

11          THE RESPONDENT:  AND YET WE STILL HAVE THIS

12  SITUATION, SIR.

13          THE COURT:  IT WAS REVERSED.

14          THE RESPONDENT:  THE PROBLEM IS WE ARE ALL

15  STILL DETAINED.  WE ARE ALL STILL -- NOTHING HAS

16  HAPPENED.  WE ARE STILL LOCKED UP.  WE STILL ARE IN THIS

17  MORASS WONDERING WHAT TO DO.

18          THE COURT:  I KNOW THAT.  I MEAN, YOU ARE

19  PREACHING TO THE CHOIR.

20          THE RESPONDENT:  YES, SIR.

21          THE COURT:  HAVE YOU READ ANY OF THE OPINIONS

22  THAT HAVE COME FROM THIS COURT?

23          THE RESPONDENT:  I HAVE READ THE TIMMS REPORT.

24          THE COURT:  DID YOU READ THE BRONCHEAU

25  OPINION?

1          THE RESPONDENT:  YES, SIR.  I UNDERSTAND THAT,

2    SIR.

3          THE COURT:  AND OF COURSE YOU READ COMSTOCK

4    FROM THE SUPREME COURT?

5          THE RESPONDENT:  THAT I HAVEN'T READ, SIR.

6          THE COURT:  WELL, THAT IS WHERE IT ALL BEGINS.

7    THE POLICY, SMALL 'P', IS TO PUSH DOWN FROM THE SUPREME

8    COURT.  I MEAN, THIS IS -- I UNDERSTAND WHAT YOU ARE

9    SAYING.

10          THE RESPONDENT:  SO ONE HAS TO ASK HIMSELF

11    WITH RESPECT, SIR, WHERE IS THE JUSTICE IN THIS?  IS THE

12    JUSTICE MERELY IN THE PROCEDURE?

13          THE COURT:  WELL, THE IMPLICATION IS THAT

14    YOU ARE MENTALLY SUFFERING FROM A MAJOR MENTAL DISORDER

15    AS IF YOU WERE INSANE.

16          THE RESPONDENT:  YES, SIR.

17          THE COURT:  AND THAT'S -- IF YOU ARE NOT, THEN

18    NONE OF THE CARDS IN THE HOUSE OF CARDS STAND.

19          THE RESPONDENT:  YES, SIR.  BUT THEN AFTER

20    EIGHT AND A HALF YEARS AT DEVENS OR EIGHT AND

21    THREE-QUARTERS YEARS AT DEVENS WITH NO PSYCHOLOGICAL

22    TESTING, NO TREATMENT, AND THEN, IF I MAY, SIR --

23          THE COURT:  AND THEN LET ME TELL YOU THAT

24    BECAUSE OF THE STIGMA OF YOUR ACCUSATIONS, NO CIVIL

25    LIBERTARIAN, NO ACLU, NO LIBERAL OUTREACH GROUP, NO ONE

```
 1    WILL GET NEAR YOU.  THERE ISN'T THE FIRST CIVIL RIGHTS

 2    ADVOCATE WHO HAS EVER COME CLOSE TO A CHAMPIONING OR

 3    DEFENDING THE CONSTITUTION ON THIS ISSUE.

 4              THE RESPONDENT:  ABSOLUTELY.  AND I UNDERSTAND

 5    THAT.

 6              THE COURT:  IT'S -- THE HYPOCRISY IS

 7    DEAFENING.

 8              THE RESPONDENT:  YES, SIR.  THANK YOU FOR

 9    THAT, SIR.

10              THE COURT:  AND IF YOU WENT TO CONGRESS AND

11    DID IS A SURVEY OF THE MOST CONSERVATIVE MEMBER AND THE

12    MOST RADICAL LEFT WING MEMBER, THEY WOULD BOTH BE FOR

13    THIS LAW.

14              THE RESPONDENT:  YES, SIR.

15              THE COURT:  AND SO IT'S A DARK HOLE IN

16    AMERICAN JUSTICE.

17              THE RESPONDENT:  THANK YOU FOR THAT, SIR.

18              THE COURT:  I AM NOT HERE TO VINDICATE YOU.  I

19    AM HERE TO VINDICATE THE LAW.

20              THE RESPONDENT:  THE SYSTEM, THE LAW; YES,

21    SIR.

22              THE COURT:  I HAVE NO AGENDA VIS-A-VIS YOU OR

23    ANYONE ELSE WHO IS ACCUSED.

24              SO WHERE DO YOU GO FROM HERE?

25              THE RESPONDENT:  THAT'S A VERY GOOD QUESTION,
```

1    SIR.  ALL WE CAN DO, ALL I CAN DO PERSONALLY, AS I

2    SUPPOSE THE OTHER CIVIL DETAINEES, IS WORK WITH THE

3    ATTORNEYS.  I MEAN, WE ARE SUBJECT TO THE SYSTEM.  THERE

4    IS NOTHING MORE THAT WE CAN DO OTHER THAN ABIDE BY WHAT

5    ATTORNEYS AND THE COUNSEL AND THE COURTS ARE ABLE OR

6    UNABLE TO DO WITH RESPECT TO OUR SITUATION.

7              I MEAN, IT FALLS WITHIN THE PROVINCE OF THE

8    JUDICIAL SYSTEM WE HAVE TO WORK AND LIVE AND ABIDE BY.

9              THE COURT:  HAVE YOU ATTEMPTED TO WORK YOUR

10   PARTICULAR CASE OUT THROUGH AGREEING WITH THERAPY AND

11   BEING RECOVERED?

12             THE RESPONDENT:  I DON'T -- I SUBMIT TO THE

13   COURT THAT I DO NOT NEED THAT THERAPY AND I WOULD BE

14   CERTAINLY WILLING TO HAVE ANY PSYCHIATRIST IN THE COUNTRY

15   ATTEST TO THAT.

16             THE COURT:  BECAUSE THERE IS A REAL CHANCE --

17   AND I HATE TO BE A LEGAL CYNIC -- THERE IS A REAL CHANCE

18   THAT THE HIGHER COURTS, BECAUSE OF POLICY, WILL NEVER

19   RULE FOR A DETAINEE, EITHER ON THE MERITS OR ON

20   PROCEDURE.

21             YOU HAVE A SUPREME COURT COLLECTION THAT

22   CROSSES OVER IDEOLOGICAL LINES, SO THERE IS NO WAY OUT.

23   DO YOU FOLLOW ME?

24             THE RESPONDENT:  YES, I DO, SIR.

25             THE COURT:  I MEAN, APPARENTLY THE WAY OUT IS

1    TO GIVE UP AND TO JUST GO ALONG AND HOPE THAT IN A COUPLE

2    OF MONTHS THEY SAY, WELL, WE DON'T NEED TO MESS WITH YOU

3    ANYMORE, GET OUT OF HERE.

4         THE RESPONDENT:  WITH RESPECT, SIR, THE

5    TREATMENT PROGRAM, THE S.O.T. TREATMENT PROGRAM THAT THEY

6    OFFER AT THE MARYLAND UNIT, THERE ARE ONLY THREE INMATES

7    IN IT, THREE COMMITTED INMATES IN IT.  TWO OF THEM HAVE

8    BEEN IN IT FOR A GOOD FEW YEARS.  THEY ARE GETTING

9    NOWHERE WITHIN THAT PROGRAM.  IT'S SUPPOSED TO BE A

10   FIVE-STEP PROGRAM AND THIS WAS DISCUSSED IN THE COURTS OF

11   MASSACHUSETTS RECENTLY WITH ONE OF THE CIVILLY COMMITTED,

12   SHEILDS IS HIS NAME, AND THERE IS NO FIFTH STEP IN THE

13   PROGRAM YET.  AND THE FIFTH STEP IS THE EXIT STEP.

14        AND HERNANDEZ, WHO IN CHARGE OF THE PROGRAM,

15   HAS SAID WE DON'T HAVE A FIFTH STEP YET.  WE HAVE NO WAY

16   OF RELEASING THESE GENTLEMEN, THE THREE THAT HE HAS, TO

17   THE OUTSIDE, AND THE COURT HAS SAID UNTIL SUCH TIME AS A

18   FIFTH STEP IS STRUCTURED AND PUT TOGETHER, THERE IS NO

19   QUESTION OF RELEASE.

20        SO EVEN IF ONE IS IN THE TREATMENT PROGRAM, I

21   SUBMIT, SIR, AS IT EXISTS AT MARYLAND UNIT UNDER S.O.P.,

22   THOSE INMATES STILL ARE NO CLOSER REALLY TO GETTING OUT

23   THAN WE ARE.  THEY ARE HUNG UP ON THIS THING.

24        THE COURT:  IT'S A PERFECT CATCH-22.

25        THE RESPONDENT:  YES, SIR.  THANK YOU, SIR.

1          THE COURT:  YOU HAVE TO PARTICIPATE IN THE

2     TREATMENT IN ORDER TO RECOVER, AND THE TREATMENT HAS NO

3     CONCLUSION.

4          THE RESPONDENT:  CORRECT, SIR.

5          THE COURT:  WHAT ARE YOU GOING TO DO, MR.

6     MCNAMARA?

7          MR. MCNAMARA:  WELL, I THINK MR. EBEL NEEDS TO

8     HAVE A HEARING AS SOON AS POSSIBLE.

9          THE COURT:  HEARING ON WHAT?

10         MR. MCNAMARA:  PARDON ME?

11         THE COURT:  HEARING ON WHAT?

12         MR. MCNAMARA:  HEARING ON THE ISSUE AT HAND.

13         THE COURT:  ON HIS -- ON THE MERITS?

14         MR. MCNAMARA:  ON THE MERITS, I WOULD THINK,

15    BUT HIS PROBLEM IS HE IS NUMBER 90 ON THE CERTIFICATION

16    LIST, AND I UNDERSTAND THE COURT IS GOING TO TAKE THEM

17    FROM NUMBER ONE AS COMSTOCK AND --

18         THE COURT:  WHAT COURT?  NOT ME.

19         MR. MCNAMARA:  WELL, I KNOW THERE IS -- JUDGE

20    GATES IS WORKING ON AN ORDER NOW --

21         THE COURT:  BUT HE IS NOT WORKING FOR ME.

22         MR. MCNAMARA:  NO, I KNOW THAT, BUT HE IS

23    GOING TO TAKE ALL OF THOSE WHO HAVE NOT REQUESTED A

24    HEARING TO DATE AND HYPOTHETICALLY SAY --

25         THE COURT:  WELL, HIS GOOD LUCK IS HE HAS GOT

1    ME AS HIS JUDGE, SO HE IS NOT IN THE LOOP WITH ALL THE

2    OTHERS.

3              MR. MCNAMARA:  RIGHT.

4              THE COURT:  I WILL TAKE THEM AS THEY ARE

5    READY.

6              MR. MCNAMARA:  OKAY.  AND YOU KNOW, AS YOU CAN

7    TELL, HE IS A VERY INTELLIGENT MAN, VERY ARTICULATE.

8              THE COURT:  WELL, THAT CUTS BOTH WAYS THOUGH.

9              MR. MCNAMARA:  WELL, IT DOES.

10             THE COURT:  SOMEONE WHO IS HIGHLY INTELLIGENT

11   COULD BE MORE CAPABLE OF MANIPULATION THAN SOMEBODY WHO

12   IS FAIRLY SIMPLE.

13             MR. MCNAMARA:  THAT IS TRUE.

14             THE COURT:  I AM NOT ACCUSING HIM OF THAT.

15   IT'S JUST -- YOU KNOW, ALL DIFFERENT FACETS UP HERE.

16             MR. MCNAMARA:  ONE THING IN MR. EBEL'S CASE,

17   IF YOU LOOK BACK AT WHAT HAPPENED PRIOR TO THE CONVICTION

18   HE WENT TO PRISON FOR, HE HAD ONE SEXUAL ASSAULT THAT HE

19   GOT PROBATION FOR THAT HAPPENED IN THE UNITED KINGDOM.

20   HE WAS LIVING IN GREAT BRITAIN AT THE TIME AND THAT'S ALL

21   HE HAS ON HIS PRIOR RECORD.

22             THE COURT:  SO HE HAS GOT NO PROCEDURAL

23   IMPEDIMENTS TO HIS CASE MOVING FORWARD.  HE IS NOT TRYING

24   TO DISMISS IT.

25             MR. MCNAMARA:  NO.  NO, WE HAVEN'T.  WELL,

1    THERE IS A MOTION PENDING, YES.  WE HAVE ASKED THE COURT

2    TO RELEASE HIM TO HIS SUPERVISED RELEASE TERM.

3            THE COURT:  WELL, IF I DO THAT, THAT IS GOING

4    TO PUT HIM IN THE COURT OF APPEALS.

5            MR. MCNAMARA:  CORRECT.  YES.  I HAVE TOLD HIM

6    THAT, BUT IT'S -- YOU KNOW, IT'S A SHOCK.  THAT IS

7    LEGALLY ABOUT THE ONLY WAY WE CAN CHALLENGE IT PRIOR TO A

8    HEARING ON THE MERITS.  BUT --

9            THE COURT:  HE WANTS TO BE PUT IN THE

10   BRONCHEAU COLLECTION.

11           MR. MCNAMARA:  WELL, I DON'T KNOW THAT HE

12   REALLY WANTS IT.  WE ARE TAKING ADVANTAGE OF IT BECAUSE

13   IT'S A POSSIBILITY.  I MEAN, IT'S CLEAN.  HE DOESN'T HAVE

14   ANY IMPEDIMENT OTHER THAN GOING ON SUPERVISED RELEASE,

15   BUT THEN HE GETS IN THE BRONCHEAU COLLECTION, AS YOU SAY.

16           BUT THE ONLY THING, WE ARE PURSUING THAT

17   BECAUSE NUMBER 90 ON THE CERTIFICATION LIST, WE THOUGHT

18   IT WOULD BE AWHILE IF THAT IS ACTUALLY FOLLOWED.

19           THE COURT:  WELL, HE IS NOT NUMBER 90 ON MY

20   CERTIFICATION LIST.  I HAVE 23 OR SO CASES, AND I AM NOT

21   PREPARED TO SAY OR TO COMMIT THAT THE OLDEST IS THE

22   FIRST.

23           MR. MCNAMARA:  WELL, I DIDN'T KNOW, SO THAT IS

24   WHY I AM JUST ASSUMING HE MIGHT BE THE LAST ON YOUR LIST,

25   BUT I UNDERSTAND WHAT YOU SAY.

1          SO I HAVE BEEN TELLING HIM --

2          THE COURT:  I AM GOING TO TAKE INTO ACCOUNT

3     THE RELATIVE MERITS AND I AM NOT GOING TO TAKE THE MOST

4     DIFFICULT AND LEAST LIKELY CASE TO HAVE A DIFFERENT

5     OUTCOME AND DO THAT FIRST JUST FOR THE SAKE OF DOING IT.

6          MR. MCNAMARA:  YES.  WELL, THAT IS GOOD.  THAT

7     WOULD HELP.

8          IF I COULD MENTION ONE OTHER THING THAT IS

9     REALLY PLAGUING MR. EBEL AND ME.  HE HAS A SWOLLEN LEFT

10    LEG, AND IT IS -- I HAVE SEEN IT -- IT'S A LOT LARGER

11    THAN HIS OTHER LEG, AND HE HAS DIFFICULTY WALKING, AND HE

12    IS JUST NOT GETTING THE MEDICAL ATTENTION THERE AT BUTNER

13    THAT OTHERS HAVE COMPLAINED ABOUT, BUT I SEE HIS MORE

14    BECAUSE I UNDERSTAND WHAT THE PROBLEM IS.

15         HIS KNEE HURTS HIM SO MUCH HE CAN HARDLY WALK.

16    HE HAS SEEN A P.A. THERE AND THEY HAVE TOLD HIM IT'S A

17    LIGAMENT PULL OR SOMETHING LIKE THAT.  I DON'T KNOW.  I

18    KNOW, YOU KNOW, YOU PROBABLY CAN'T DO ANYTHING ABOUT IT,

19    BUT WE THOUGHT WE WOULD COMPLAIN TO SOMEBODY BECAUSE WE

20    BOTH HAVE BEEN TRYING TO GET THE BUTNER PEOPLE MOVING ON

21    IT, AND THERE IS NO MOVEMENT.

22         AND I HATED, SINCE HE AND I ARE CLOSE IN AGE,

23    I THINK, AND I DON'T KNOW IF AN OLDER PERSON RUNS UP INTO

24    THAT MUCH SWELLING IN HIS LEG, YOU WOULDN'T WANT THAT TO

25    HAPPEN ELSEWHERE.  SO MAYBE I AM TALKING TO THE U.S.

1    ATTORNEY.  MAYBE THEY CAN CONVINCE BUTNER TO DO SOME

2    MEDICAL ATTENTION.

3            THE COURT:  WELL, WHAT IS THE STANDARD?  IT'S

4    NOT EIGHTH AMENDMENT.  IT'S DUE PROCESS FOR CRUEL AND

5    UNUSUAL PUNISHMENT.  IF HE IS NOT SERVING A SENTENCE,

6    IT'S NOT THE EIGHTH AMENDMENT.

7            MR. MCNAMARA:  IT'S EIGHTH AMENDMENT MAYBE.  I

8    DON'T KNOW.  WE MIGHT HAVE TO GO THAT ROUTE, I SUPPOSE.

9            THE COURT:  YOU CAN FILE A 2241 AND ASK FOR AN

10   INJUNCTION.

11           MR. MCNAMARA:  I GUESS WE COULD DO THAT.

12   MAYBE JUST BY TALKING ABOUT IT, SOMEBODY WILL GET MOVING

13   ON IT.

14           THE COURT:  THAT IS DOUBTFUL.

15           MR. MCNAMARA:  I HAVE WRITTEN LETTERS AND

16   TALKED TO THEM, BUT NOTHING HAS HAPPENED.  I JUST WANTED

17   TO MENTION THAT, YOUR HONOR.

18           THE COURT:  YES.  WELL, I AM SURE THAT THE

19   GOVERNMENT WILL BE RESPONSIVE IF WE CAN BRING IT TO THEIR

20   ATTENTION.

21           MR. MCNAMARA:  ALL RIGHT.  THANK YOU.

22           THE COURT:  DO YOU HAVE ANY POSITION ABOUT

23   THIS CASE AND WHAT HAS BEEN SAID?

24           MR. RENFER:  ONLY THAT THERE IS THE MOTION TO

25   DISMISS AND THE ARGUMENTS IN IT ARE BASICALLY TIMMS AND

1    THE BRONCHEAU ARGUMENT, AND HE HAS -- MR. EBEL HAS NOT

2    MADE A REQUEST FOR HEARING.

3           THE COURT:  WAS HE THE LAST PERSON CERTIFIED

4    OR HAVE PEOPLE BEEN CERTIFIED SINCE THEN?

5           MR. RENFER:  THERE HAVE BEEN A FEW OTHERS,

6    YOUR HONOR.  SO HE IS NOT THE LAST.  BUT, COUNSEL IS

7    CORRECT, HE IS DOWN -- HE IS ONE OF THE MORE RECENT ONES.

8           MR. MCNAMARA:  HE WAS CERTIFIED IN JUNE OF

9    THIS YEAR, AND I THINK THEY STOPPED IN JULY.  THEN IT WAS

10   THE LAST ONE THAT I THINK THEY HAVE HAD.

11          THE COURT:  WELL, COMSTOCK CAME DOWN IN MAY.

12          MR. MCNAMARA:  THAT'S CORRECT.  AND IF HE IS

13   NUMBER 90, I THINK THEY WENT UP TO 100, SO THERE MAY BE

14   TEN OTHERS.

15          MR. RENFER:  I THINK PERHAPS -- I AM NOT SURE

16   IF -- WAS THIS THE SPREADSHEET THAT I SUBMITTED TO JUDGE

17   GATES?  HE WANTED A SPREADSHEET OF THE --

18          THE CLERK:  NO, THAT IS NOT.

19          MR. RENFER:  I CAN GET THE INFORMATION ON

20   WHERE THEY ARE IN THE LINE, YOUR HONOR, IF YOU WANT.

21          THE COURT:  IF YOU WOULDN'T MIND SUBMITTING

22   THAT LATER.

23          MR. RENFER:  SURE.

24          THE COURT:  THAT WOULD HELP US FOLLOW ALONG.

25          MR. RENFER:  SURE.  YES.

1              THE COURT:  OKAY.  IS THAT ALL FOR HIM?

2              MR. RENFER:  I MIGHT JUST COMMENT, YOUR HONOR,

3     MANY MANY TIMES WE HEAR DETAINEES OR INMATES COMPLAINING

4     ABOUT MEDICAL CARE, AND OF COURSE WE EXPLORE ALL OF THOSE

5     WHEN THEY COME UP INTO SOME TYPE OF LITIGATION OR

6     COMPLAINT, BUT I CAN SAY THAT I HAVEN'T LOOKED AT THE

7     MEDICAL, BUT I HAVE FOUND THAT THE MEDICAL RECORDS ON

8     THESE ARE VERY EXTENSIVE, AND I AM NOT SURE WHY THEY

9     HAVEN'T RESPONDED TO YOU, BUT I WOULD BE SURPRISED IF

10    THERE IS NOT A SUBSTANTIAL MEDICAL RECORD.

11             MR. MCNAMARA:  WELL, THIS JUST STARTED A MONTH

12    AGO.

13             MR. RENFER:  OKAY.  WELL, THEN MY SUGGESTION

14    IS ASK FOR TREATMENT, AND IF HE DOESN'T THINK HE IS

15    GETTING IT, THEN PUT IT IN AN ADMINISTRATIVE COMPLAINT.

16    THAT IS THE PROCESS.

17             MR. MCNAMARA:  WELL, WE HAVE DONE THAT.  I

18    HAVE WRITTEN LETTERS, CALLED, TALKED TO PEOPLE.  HE HAS

19    DONE THE SAME.  HE IS JUST NOT GETTING THE TREATMENT THAT

20    I THINK HE NEEDS.

21             THE RESPONDENT:  WITH ALL DUE, YOUR HONOR,

22    ADMINISTRATION HAS ACCOMPLISHED VERY LITTLE, WITH ALL DUE

23    RESPECT.

24             THE COURT:  WELL, I WOULD ADVISE YOU TO FILE

25    WHATEVER YOU WANT TO BRING TO MY ATTENTION, FURTHER

1    PROCEEDINGS IN THE CASE, AND WE'LL MOVE IT ALONG.

2              MR. MCNAMARA:  I WILL, YOUR HONOR.  THANK YOU.

3              THE COURT:  OKAY.  THANK YOU.

4              MR. MCNAMARA:  THANK YOU FOR LISTENING TO US.

5              THE RESPONDENT:  THANK YOU, YOUR HONOR.

6              THE COURT:  YES.

7              (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)

8

9

10                        CERTIFICATE

11

12              THIS IS TO CERTIFY THAT THE FOREGOING

13   TRANSCRIPT OF PROCEEDINGS TAKEN IN THE UNITED STATES

14   DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF

15   THE SHORTHAND NOTES, CONSISTING OF THE WHOLE THEREOF, OF

16   THE PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND

17   TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

18              DATED THIS 29TH DAY OF AUGUST, 2011.

19

20                                 /S/ SHARON K. KROEGER
                                   COURT REPORTER

21

22

23

24

25